UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CINDY S.,[1]

      Plaintiff,

  v.                              Civil Action 2:25-cv-293
                                 Judge Michael H. Watson
                                 Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Cindy S. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental social security income ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.    BACKGROUND

Plaintiff filed her SSI application on January 15, 2022, alleging that she became disabled beginning on October 17, 2020. After her application was denied initially and on reconsideration, an Administrative law Judge ("ALJ") held a telephonic hearing on March 7, 2024, at which

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

Plaintiff, who was represented by counsel, appeared and testified. (R. at 48–84.) A vocational expert ("VE") also appeared and testified. On April 22, 2024, the ALJ issued an unfavorable determination. (*Id*. at 14–47.)

Plaintiff seeks judicial review of that unfavorable determination. She raises two related contentions of error. First, she contends that the ALJ committed reversible error by failing to include in her residual functional capacity[2] ("RFC") an accommodation for her need to elevate her legs. (Pl.'s Statement of Errors 14–17, ECF No. 14.) Second, she contends that the ALJ reversibly erred when evaluating medical opinion evidence about that alleged limitation. (*Id*. at 17–18.) Defendant correctly argues that neither of these contentions of error have merit. (Def.'s Mem. in Opp'n 3–8, ECF No. 15.)

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on April 22, 2024. (R. at 14–47.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her January 15, 2022 application date. (*Id*. at 22.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: degenerative disease joint disease/arthritis of the right knee status post remote surgical intervention; status post remote left foot fracture and dislocation; bilateral lower extremity venous insufficiency with varicose veins; asthma; obesity; degenerative joint disease of the right foot; plantar fasciitis bilateral feet; anemia; degenerative disc disease of the thoracic spine; an affective disorder (depression/dysthymic); an anxiety disorder; a posttraumatic stress disorder (PTSD); and borderline intellectual functioning (BIF). (*Id*. at 23.) At step three, the ALJ found

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

   5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 25.)

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant should avoid climbing ladders, ropes, and scaffolds. She should avoid exposure to hazards including unprotected heights and dangerous machinery. The claimant could frequently crouch or crawl. She could occasionally stoop, climb ramps and stairs, or kneel. The claimant could tolerate occasional exposure to dusts, fumes, odors, gases or poorly ventilated areas. The claimant could tolerate occasional exposure to extreme temperatures and humidity. The claimant could perform simple, routine 1-3 step tasks, in a relatively static/predictable environment where there were occasional changes in work duties/processes, not involving a fast assembly line pace or strict production quotas.

(*Id*. at 27.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id*. at 1635.) Relying on the VE's testimony, at step five, the ALJ determined that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of routing clerk, sorter, and tester. (*Id*. at 1636.) Accordingly, the ALJ determined that during the relevant time frame, Plaintiff was not disabled as defined in the Social Security Act. (*Id*. at 1637.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this

4

standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As previously explained, Plaintiff contends that the ALJ erred by failing to accommodate her need to elevate her legs and by improperly evaluating related medical opinion evidence. The undersigned addresses each contention of error, although not in the order that Plaintiff has presented them and concludes that neither has merit.

A.      **The Purported Medical Opinion Evidence**

Plaintiff contends that the ALJ when evaluating opinions from her medical providers. Specifically, she contends that the ALJ was required to explain how he considered the supportability and consistency of her providers' purported opinions that she needed to elevate her legs. This contention of error lacks merit.

The relevant regulations require an ALJ to articulate how he considered the supportability and consistency of medical opinions. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). But a medical opinion is defined as "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activities. *Id*. at §§ 404.1513(a)(2); 416.913(a)(2). Thus, the essence of a medical opinion is a statement describing a claimant's functional abilities or work-related functional limitations.

The records on which Plaintiff relies do not constitute medical opinions. Plaintiff points to two treatment notes. The first, dated January 13, 2022, was authored by a physician assistant ("PA") who worked with Plaintiff's podiatrist. (R. at 407.) That note reflects findings of moderate bilateral lower extremity edema without pitting or calf tenderness and indicates that discussions were had about "good edema control with compression, low salt, and elevation when [not weight bearing] and at night/rest." (*Id*. at 406–07.) The second note, dated May 31, 2022, was authored by Plaintiff's cardiologist, Dr. Bardales, who noted Plaintiff's reports of bilateral lower extremity edema and wrote: "Elevate feet while sitting, avoid salty foods." (*Id*. at 694–95.)

Neither note contain a statement about Plaintiff's functional capabilities or work-related limitations. Neither specifies how often, how long, or to what height Plaintiff would need to elevate her legs. Accordingly, both notes constitute routine treatment records rather than medical

6

opinions. *See Tina D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-152, 2023 WL 2759861, at *5–6 (S.D. Ohio Apr. 3, 2023) (finding treatment note recommending leg elevation did not constitute a medical opinion where note made no statements about the plaintiff's abilities or functional work-related limits); *Bobbie N. E. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-524, 2022 WL 4151752, at *4 (S.D. Ohio Sept. 13, 2022) (finding that stray recommendations to elevate legs in treatment records were too vague to constitute medical opinions where recommendations did not indicate when or how long the plaintiff should elevate legs).

Although the ALJ was required to consider these treatment notes as part of the record when assessing Plaintiff's RFC, he was not required to articulate findings about their supportability or consistency because they were not medical opinions. Plaintiff's contention to the contrary lacks merit.

**B.**     **Failure to Include a Leg Elevation Limit in Plaintiff's RFC**

Plaintiff also contends that the ALJ erred by failing to include in her RFC a limitation to accommodate her need to elevate her legs due to her edema. This contention of error is also unavailing.

In *Sorrell v. Comm'r of Soc. Sec.*, the Sixth Circuit Court of Appeals held that an ALJ did not err by omitting a leg-elevation limitation in a plaintiff's RFC. 656 F. App'x 162, 170 (6th Cir. 2016). The Sixth Circuit explained that "[i]t [was] clear from the record that the ALJ considered [the claimant's leg] swelling and the need for her to elevate her legs." *Id*. Further, although "some treatment records mentioned leg elevation as a treatment for edema, no physician indicated that [the claimant's] edema caused work-related functional limitations, and no medical expert opined that [the claimant] would need to elevate her feet to waist level during

7

the workday or even every day." *Id*. Moreover, the claimant's own testimony indicated that the swelling was intermittent and that it reduced with medication. *Id*.

  The same is true here. First, like the ALJ in *Sorrell*, the ALJ here explicitly considered Plaintiff's lower extremity swelling. The ALJ noted Plaintiff's testimony about "ongoing leg edema" and her use of conservative treatment measures such as leg elevation, a low salt diet, and intermittent use of compression stockings. (R. at 30.) He also cited treatment records documenting Plaintiff's reports of swelling, occasional findings of edema in her legs, and counseling on conservative management measures such as leg elevation when sitting, weight reduction, ambulation, and compression stockings. (*Id*.) But as was the case in *Sorrell*, no medical provider opined that Plaintiff's edema caused work-related functional limitations or that she needed to elevate her feet to waist level during the workday or even that she needed to elevate her legs daily. *Sorrell*, 656 F. App'x at 162.

  In addition, other evidence demonstrates that Plaintiff's edema was intermittent. From October 2020 through September 2021, Plaintiff denied edema or had none during examinations. (R. at 709, 386, 389, 706, 1228, 392, 395, 398, 1227, 403, 701.) Between January 2022 and May 2022, Plaintiff reported, or edema was noted at some visits (*id*. at 406–07, 696, 694–95) but not at all visits (*id*. 699). There were no findings or reports of edema during almost all of Plaintiff's examinations in 2023. (*Id*. at 1168, 1178, 1020, 836–37.) Indeed, edema was not present or reported during examinations during the eighteen-month period from May 31, 2022, until it was noted on her right lower extremity in December 2023 and January 2024. (*Id*. at 876, 882, 878, 879.) But edema was absent again in early February 2024 (*id*. at 981), present only in Plaintiff's right lower extremity later that month (*id*. at 1321, 1323) and entirely absent again in March 2024 (*id*. at 1417).

8

Plaintiff's testimony during the following exchange at the March 7, 2024 hearing further demonstrates the intermittent nature of her edema.

> Q. And I had mentioned doctors noticing the swelling in your legs.
>
> A. Yeah.
>
> Q. Are you still experiencing that?
>
> A. Yes, I got swelling in my lets (*sic*) and feet. Yes.
>
> Q. How often are you experiencing that with your legs?
>
> A. I'm not really sure. I really - - I mean, because I really don't look down on my legs all the time. But I do look down on my feet. *But my feet has been swollen for a few months now. My legs seem to go off and on, the swelling*. [emphasis added]

(R. at 63.) As this passage shows, Plaintiff testified that she had swelling in her feet for only a short period and that her leg swelling was irregular. Accordingly, under *Sorrell*, the ALJ did not err by failing to include in Plaintiff's RFC a leg-elevation limitation.

Even if *Sorrell* were not dispositive, Plaintiff's contention of error would still lack merit. Plaintiff notes that the VE testified that a need to elevate one's legs to heart level outside of work breaks would be work-preclusive. (*Id*. at 81.) And Plaintiff testified that "they want me to elevate my feet and legs above my heart." (*Id*. at 64.) But the treatment notes do not indicate that she was recommended to elevate her legs to this level. They simply recommend leg elevation without specifying height, duration, or frequency. The ALJ was not required to accept Plaintiff's testimony about this height requirement in the absence of corroborating treatment records.

Moreover, VEs routinely testify that there are a significant number of sedentary jobs in the national economy that allow for footstool-level elevation. *See e.g. Brown v. Comm'r*, 1 F. App'x 445, 448 (6th Cir. 2001) (Although the "full range of sedentary work was reduced by the need to elevate his right leg to footstool level . . . there are a significant number of jobs in the

9

national economy that [Brown] can perform, including bench-type work such as visual inspection, sorting, simple assembly, machine operation, as well as working as a lobby or information clerk."); *Anderson v. Comm'r*, No. 2:14-CV-1222, 2015 WL 965667, at *5–6 (S.D. Ohio Mar. 4, 2015) (Although Anderson "should be allowed to elevate her right foot on a footstool at various times throughout the workday," she can perform jobs such as "order clerk, addresser, and surveillance systems monitor.") Therefore, even if a heart-level leg-elevation limit would be work-preclusive, other leg-elevation limits might not be. Plaintiff has not demonstrated that the ALJ erred by failing to find that she required any leg-elevation limit, let alone a heart-level leg-elevation limit. For all these reasons, the undersigned finds no reversible error.

## V. DISPOSITION

For all the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's determination.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE